UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMES MURRAY,

                Plaintiff,

      – against –

NEW YORK STATE TROOPER DAVID B. RUDERFER,

                Defendant.

**OPINION AND ORDER**

15 Civ. 913 (ER)

---

Ramos, D.J.:

    After a three-day, two-witness trial before this Court, a jury rejected Plaintiff James Murray's allegations that New York State Trooper David Ruderfer violated his constitutional rights when, after a traffic stop, the trooper searched his person, his car, and detained him in handcuffs for the duration of the searches. Before the Court are Murray's post-trial motions for (1) entry of judgment as a matter of law, or (2) a new trial, or (3) an order amending the judgment in his favor, all pursuant to Fed. R. Civ. P. 50(b), 59(a) and 59(e), respectively. (Doc. 47). Murray seeks a new trial or judgment in his favor solely on the false arrest claim, on the ground that the trial testimony did not establish that Ruderfer had probable cause to arrest him for the crime of obstruction of governmental administration. For the reasons set forth below, the motions are DENIED.

**BACKGROUND**[1]

On January 9, 2014, Defendant Ruderfer was a New York State Trooper and a K-9 handler stationed at the Highland Barracks in Ulster County, New York. Trial Transcript ("Tr.") (Doc. 49-1) at 108-09. On that day while on patrol in a marked SUV, Ruderfer pulled over a car being driven by Murray in the Town of Montgomery in Orange County. Tr. at 111. Ruderfer pulled him over because the car had illegally dark window tint on the side windows such that he could not see inside the car. *Id*. at 111-12. After he pulled him over, Ruderfer walked up to the car and asked Murray for his license and registration. *Id.* at 113. When Murray opened the window to comply, Ruderfer noticed the odor of burnt marijuana emanating from the vehicle. *Id*. at 114. Ruderfer returned to his patrol SUV to run a check on Murray's license and then went back to Murray and asked that he exit his car. *Id.* at 113. When Murray got out of the car, Ruderfer explained that he had detected the odor of burnt marijuana and asked Murray if he could provide an explanation. *Id*. at 114. Murray stated that he had smoked marijuana approximately 30 days prior.[2] *Id.* At that point, Ruderfer told Murray that as a result of the smell of marijuana, he would need to search both Murray and the car. *Id.* at 115.

Ruderfer searched Murray first, during which Murray was completely compliant. After he searched Murray, Ruderfer instructed him to sit on the back bumper of the car facing the patrol SUV, which was parked behind Murray's car. *Id*. at 118. Ruderfer explained that it was his custom, when conducting vehicle searches alone, to have the driver sit on the back bumper so that he knows where the driver is at all times as he conducts the search. *Id.* at 118. By having

---

[1] The facts adduced at trial related to the false arrest claim are straightforward and largely uncontested. What differences do exist in the testimony are immaterial to the resolution of the instant motions.

[2] Murray denies that he had smoked marijuana in the car. *Id.* at 40.

2

him sit on the back bumper, Ruderfer can both see the driver through the rear window of the car, and can also feel if the driver has moved because the car will elevate. *Id*. He further described that he uses this procedure both for his safety and that of the driver:

> The thing is when you are searching the vehicle you don't know who you are searching. You don't know what that person is capable of. So everybody that I search, it's the same process. So he sits on the bumper. If there is something in that vehicle, which at this point I have no clue what could be in that vehicle, it's important to me that he's not watching me and he's facing the other way. A lot of times -- and this is not always, but a lot of times when people keep looking over or don't listen to a lawful order at first, there's the probability of something being in that car. And I'm not saying in every situation that's the case, but it does elevate to a probability that there may be something in the car. The majority of people listen to what you tell them to do, and they -- if you tell them to sit on the bumper, the majority of people sit on the bumper and comply to my instructions the first time I have to say it.

*Id*. at 119.

> When you search a vehicle and, like I said previously, you don't know the person you are searching or the vehicle you are searching. I have past experience.[3] If you are searching a vehicle and there is contraband in that vehicle and the person is looking to see if you find it, he may attack you, he may run, he may try to get into his car and drive away. That is the reality of police work. That is what happens. The reason I don't have him look back is for my safety and his own safety because I don't want that to happen.

*Id.* at 156.

Ruderfer began conducting a search of the car once Murray was sitting on the back bumper. *Id.* at 118. Almost immediately, however, Murray stood up, walked along the back of the car to its side by the tail light, and turned to look at Ruderfer. *Id*. at 119. Ruderfer asked him "politely" to sit back on the bumper, which he did. *Id*. However, on several subsequent occasions as Ruderfer was searching the car, Murray stood and watched him while pacing. *Id*. at 120. At one point, Ruderfer believes he may have even said to Murray, "How many times do I

---

[3] At the time of the stop, Ruderfer had been a trooper approximately 10 years, Tr. at 106, and had conducted "probably hundreds of thousands" of vehicle stops. *Id.* at 110. Though he acknowledged that only a small percentage of stops actually lead to vehicle searches. *Id*. at 110-11.

have to tell you to sit on the fucking bumper?" *Id*. at 139.  As a result of Murray's repeated refusals to comply with the order to remain seated, Ruderfer told him that he was being detained, placed him in handcuffs, and had him sit in the front passenger seat of the patrol SUV as he completed the search.[4]  *Id*. at 120.  Ruderfer testified that at the moment he placed him in handcuffs, he believed that Murray had committed a violation of obstructing governmental administration, which he described as someone intentionally obstructing or impairing him from performing an official law enforcement function, in this case, searching the car.  *Id*. at 129.

Ruderfer did not find any marijuana or other contraband in the car.  When he completed the search of the car, he uncuffed Murray and did not charge him with obstructing governmental administration or issue him a ticket for the window tint.  *Id*.

**PROCEDURAL HISTORY**

Murray filed the Complaint just over a year after the incident occurred on February 6, 2015.  Doc. 1.  In it, he asserted three causes of action:  illegal stop; illegal search; and false arrest.  *Id*. at 4-5.  The trial took place over three days beginning on April 18, 2016.  Only Murray testified in support of his case, and only Ruderfer testified for the defense.  After the defense rested, Murray made a partial motion pursuant to Fed. R. Civ. P. 50(a) for judgement as a matter of law related to his claim for false arrest, arguing that there was no testimony that Murray had intimidated, used physical force against, or physically interfered with Ruderfer.  Tr. at 176-77.  The Court denied the motion.  *Id.* at 180-81.  The jury thereafter returned a verdict in

---

[4] Murray testified that he was placed in handcuffs earlier, after he was searched and before Ruderfer began searching the car.  *Id.* at 45.

favor of the defense on all three causes of action.  Doc. 41.  The instant motion, seeking relief only with respect to the false arrest claim, was filed on May 20, 2016.  Doc. 47.

### STANDARD OF REVIEW

Judgment as a matter of law may not properly be granted under F.R.C.P. 50(b) unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in his favor." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.* 136 F.3d 276, 289 (2d Cir. 1998); *see also MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 180 (2d Cir. 2016) (where a jury has returned a verdict in favor of the non-movant, a court may grant judgment as a matter of law to the movant "only if the court, viewing the evidence in the light most favorable to the non-movant, concludes that a reasonable juror would have been compelled to accept the view of the moving party.") (quoting *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011))); *see also* Fed. R. Civ. P. 50(a) (A court may grant a motion as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.").  That burden is "'particularly heavy' where, as here, 'the jury has deliberated in the case and actually returned its verdict' in favor of the non-movant." *Cash*, 654 F.3d at 333 (quoting *Cross v. N.Y.C. Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005)).  A court should accordingly set aside a jury's verdict only "where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against him." *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 180 (2d Cir. 2016) (alteration in original) (quoting *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 197 (2d Cir. 2014)).  In deciding such a motion, "'[t]he

court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury,' and 'must disregard all evidence favorable to the moving party that the jury is not required to believe.'" *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014) (quoting *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001)).

Murray also moves pursuant to Rule 59(a), which permits a court to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The standard under Rule 59(a) is less stringent than that of Rule 50 in two respects: "(1) a new trial under Rule 59(a) 'may be granted even if there is substantial evidence supporting the jury's verdict,' and (2) 'a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.'" *Manley v. AmBase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003) (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133-34 (2d Cir. 1998)). "That being said, for a district court to order a new trial under Rule 59(a), it must conclude that the jury has reached a seriously erroneous result or ... the verdict is a miscarriage of justice, *i.e.*, it must view the jury's verdict as against the weight of the evidence." *Id.* (internal citation and quotation marks omitted).

Finally, Rule 59(e) allows a district court "to alter or amend a judgment." Fed. R. Civ. P. 59(e). The Second Circuit has explained that under this rule "district courts may alter or amend judgment to correct a clear error of law or prevent manifest injustice," that the rule "covers a broad range of motions," and that "the only real limitation on the type of the motion permitted is that it must request a substantive alteration of the judgment, not merely the correction of a clerical error, or relief of a type wholly collateral to the judgment." *ING Global*, F.3d at 96 (quoting *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 153 (2d Cir. 2008)); *see also id.* at 97

("Permitting a party out of compliance with Rules 50 and 51 to prevail under Rule 59(e) would render those Rules, which are basic to the conduct of federal trials, essentially superfluous. We are not inclined to endorse such a result except *perhaps* in unusually egregious circumstances, which are not presented in this case.") (emphasis in original).

## DISCUSSION

### Applicable Law

Murray brings his false arrest claim pursuant to § 1983. "[A] § 1983 claim for false arrest derives from the Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). In order to establish a § 1983 claim for false arrest, a plaintiff must allege: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). Here, there is no dispute that Ruderfer intended to confine Murray, or that Murray was conscious of, and did not consent to, the detention. The only disputed issue is whether the confinement was "otherwise privileged." Thus, if Ruderfer had probable cause to arrest Murray, then the confinement is privileged because the existence of probable cause constitutes a complete defense to a § 1983 false arrest claim. *See Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999).

"Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted).

"[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly*, 439 F.3d at 153 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). The test is "objective rather than subjective." *Id*. at 154. As long as probable cause existed that any crime has been committed, the false arrest claim will fail. *Rodriguez v. Vill. of Ossining*, 918 F. Supp. 2d 230, 240-41 (S.D.N.Y. 2013) ("Thus, as long as the Defendant officers had probable cause to arrest Plaintiff for any crime, the arrests were privileged and cannot form the basis for a false arrest claim under Section 1983."); *see also Devenpeck*, 543 U.S. at 154. As the Second Circuit has emphasized, the standard is a "fluid" one "that 'does not demand hard certainties or mechanistic inquiries'; nor does it 'demand that an officer's good-faith belief that some suspect has committed or is committing a crime be correct or more likely true than false." *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 389, 390 (2d Cir. 2013)). "Rather, it requires only facts establishing 'the kind of fair probability' on which a 'reasonable and prudent' person, as opposed to a 'legal technican [ ],' would rely." *Id.* (alteration in original) (quoting *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013)). "When determining whether probable cause existed to support an arrest," a court may "'consider those facts available to the officer at the time of arrest and immediately before it,' and ... must render [its] decision based on the 'totality of the circumstances.'" *Simpson v. City of N. Y.*, 793 F.3d 259, 265 (2d Cir. 2015) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)).

*Analysis*

Ruderfer asserts that at the time he handcuffed Murray, he believed Murray was guilty of a violation of obstruction of governmental administration. "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the

8

administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . ." N.Y. Penal Law § 195.05. New York courts have further held that the official function being performed must be one that was "authorized by law." *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995) (citing *In re Verna C.*, 143 A.D.2d 94, 531 N.Y.S.2d 344, 345 (2d Dep't 1988)).  Plaintiff argues that probable cause was not objectively established because the trial testimony does not support the conclusion that Murray intimidated[5] or physically interfered with Ruderfer, or intended to do so.

Two items bear noting at the outset.  First, Murray is not contesting that Ruderfer had probable cause to search his car.  Thus, Murray necessarily concedes that the search of the car was a lawful official or governmental function as contemplated by the statute—a conclusion that the Court easily reaches even in the absence of any concession on the part of Plaintiff.  More to the point, it is a conclusion supported by the jury's verdict in finding for Ruderfer on the illegal search claim.

Second, Murray is not contesting that Ruderfer's instruction that he sit on the back bumper while he conducted the search was in any way unlawful or improper, nor can he.  As Ruderfer testified, the reason he instructed Murray to sit on the bumper facing away from him was to ensure his safety and that of Murray while he searched the car.  An experienced trooper who had conducted tens of thousands of car stops at the time of this incident, Ruderfer credibly testified that such encounters are fraught with uncertainty and potential danger:  "If you are searching a vehicle and there is contraband in that vehicle and the person is looking to see if you

---

[5] Ruderfer never testified that he was intimidated by Murray.  Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Judgment as a Matter of Law, Doc. 50, at 14.

find it, he may attack you, he may run, he may try to get into his car and drive away.  That is the reality of police work. . . .  The reason I don't have him look back is for my safety and his own safety because I don't want that to happen."  Tr. at 156.  He further testified that having Murray sit on the bumper allowed him to conduct the search while at the same time monitoring Murray's location and his reaction, if any, to the search.  *Id.*  In Ruderfer's experience, and consistent with simple common sense, an individual who knows that the car being searched contains contraband is more likely to exhibit a heightened level of anxiety:  "A lot of times -- and this is not always, but a lot of times when people keep looking over or don't listen to a lawful order at first, there's the probability of something being in that car."  *Id.* at 119.  In this case, while Ruderfer had his K-9 partner in the patrol SUV, there was no other trooper on the scene.  He was alone, had already detected the smell of burnt marijuana emanating from the car, and was told by Murray that he had smoked marijuana within the last 30 days.  The direction to sit on the bumper was entirely lawful under the circumstances.[6]

       The dispositive issue therefore, is whether Murray intentionally interfered with the search by repeatedly failing to follow Ruderfer's lawful order to remain seated on the bumper while he completed the search.  The Court concludes that the evidence amply supported the jury's verdict

---

[6] To be sure, in any number of circumstances, law enforcement officers are entitled to take minimally intrusive measures to secure their safety and that of the public as they carry out their duties.  *See, e.g., Terry v. Ohio*, 392 U.S. 1, 27 (1968) (endorsing "a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime."); *U.S. v. Miller*, 430 F.3d 93, 98 (2d Cir. 2005) (holding that "a law enforcement officer present in a home under lawful process, such as an order permitting or directing the officer to enter for the purpose of protecting a third party, may conduct a protective sweep when the officer possesses 'articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the . . . scene.'") (quoting *Maryland v. Buie*, 494 U.S. 325, 334 (1990)); *U.S. v. McCargo*, 464 F.3d 192, 200-01 (2d Cir. 2006) (upholding against a constitutional challenge police policy of frisking individuals, even those not suspected of any crime, before transporting them in police vehicles:  "The justification for the pat-down is not that the suspect is reasonably suspected of being armed; it is rather a matter of sound police administration: police officers should be certain before transporting members of the public, whom they do not know, that none of them is armed.")

that there was probable cause to believe that Murray interfered with Ruderfer's attempt to search the car.

"An officer has probable cause to arrest for obstructing governmental administration where a person refuses to comply with an order from a police officer." *Marcavage v. City of New York*, No. 05 Civ. 4949 (RJS), 2010 WL 3910355, at *10 (S.D.N.Y. Sept. 29, 2010) (quoting *Johnson v. City of New York*, No. 05 Civ. 7519 (PKC), 2008 WL 4450270, at *10 (S.D.N.Y. Sept. 29, 2008)), *aff'd*, 689 F.3d 98 (2d Cir. 2012), *cert. denied*, 133 S.Ct. 1492 (March 4, 2013); *see also Lennon*, 66 F.3d at 424 (probable cause for arrest and prosecution of woman who refused to follow officer's order to leave her vehicle). In *Marcavage,* the defendants were arrested after failing to heed 17 separate orders from three different police officers to leave a demonstration zone during the 2004 Republican National Convention in New York City. 2010 WL 3910355. at *1. The Second Circuit affirmed, noting that the order by the police officers to the plaintiffs to leave the area was lawful. 689 F.3d at 110. Importantly, though the Circuit Court noted that plaintiffs were hostile and noncompliant, *id.*, no portion of its decision—or that of the district court for that matter—turned on the question of actual physical interference, or on any attempt by the plaintiffs to intimidate the officers; probable cause was established by the simple and repeated failure of the plaintiffs to abide by a lawful order to disperse*. See also Akinnagbe v. City of N. Y.,* 128 F. Supp. 3d 539, 545 (E.D.N.Y. 2015) (an officer has probable cause to arrest for obstructing governmental administration where a person refuses to comply with an order from a police officer); *Johnson v. City of New York*, 2008 WL 4450270, at *10 (finding probable cause to prosecute for obstructing governmental administration where plaintiff ignored police order to open the door or show his hands); *Allen v. City of N. Y.*, 480 F. Supp. 2d 689, 715 (S.D.N.Y. 2007) (probable cause to arrest for obstruction

11

of governmental administration where inmate refused to obey correction officers' direct order to move).

*Uzoukwu v. Krawiecki*, No. 10 Civ. 4960 (RA), 2016 WL 6561300 (S.D.N.Y. Nov. 4, 2016) is also instructive. In that case, the plaintiff had been prosecuted for, *inter alia*, obstruction of governmental administration for failing to leave a park when instructed. As adduced at trial, on the day of his arrest, the plaintiff was sitting on a bench in a park subject to a rule prohibiting adults without children. *Id.* at *3. The police approached him because there was no indication that he was there with a child. *Id.* After approaching, they asked him several times if he was there with children, but he did not respond. They told him that, if he was not with children, then he was not allowed to be in the park. *Id.* Again, he did not respond. *Id.* When an officer then took what he was eating from his hands, the plaintiff stood up and began screaming and cursing at the officers. *Id.* The plaintiff had no physical interaction with the officers, nor was there any indication that he intimidated the officers. He was arrested and charged with obstruction of governmental administration, among other charges. The plaintiff subsequently sued the arresting officers, alleging that he was falsely arrested. After trial, the jury found in favor of the officers. Plaintiff then moved pursuant to Fed. R. Civ. P. 50 and 59(a). The district court upheld the jury's verdict:

> Having reasonably concluded that [plaintiff] was violating the park rule prohibiting adults not in the company of children, Officers Miluso and Krawiecki lawfully ordered [plaintiff] to leave the playground. At trial, the evidence established that [plaintiff] did not leave the playground, refusing to comply with the Officers' lawful order. Therefore, the jury had sufficient grounds to conclude that the Officers had probable cause to arrest [plaintiff] for obstruction of governmental administration.

*Id.* at *7 (internal citations omitted); *see also Caravalho v. City of New York*, No. 13 Civ. 4174 (PKC), 2016 WL 1274575, at * 6 (S.D.N.Y. Mar. 31, 2016) ("A dispersal order reasonably calculated to enforce lawful Park Rules is itself 'lawful' . . . . ").

The same result is compelled here. Contrary to Murray's assertions, N.Y. Penal Law § 195.05 does not require actual physical interference where the facts establish that an individual has willfully failed to comply with a lawful order of a law enforcement officer. Viewed in the light most favorable to Ruderfer, the trial evidence was more than sufficient for a jury to have reasonably concluded that he had probable cause to arrest Murray for obstruction of governmental administration in that he intentionally and repeatedly failed to follow a lawful order. Accordingly, Murray's Rule 50(b) motion for judgment as a matter of law is denied. Murray also moves pursuant to Rule 59(a) on the basis that the jury's verdict was against the weight of the evidence. That argument fails for the same reasons stated above. Finally, Rule 59(e) allows a district court to alter or amend a judgment to correct a clear error of law or prevent manifest injustice. *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 153 (2d Cir. 2008). In light of the Court's conclusion that the jury's verdict is supported by sufficient evidence, that motion must also be denied.

*Qualified Immunity*

Even if Murray were correct to assert that he had to physically interfere with Ruderfer in order to be guilty of obstructing governmental administration, in light of the caselaw discussed above, the Court concludes that Ruderfer is entitled to qualified immunity.

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or

(b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007) (internal quotation marks omitted). "An officer is entitled to qualified immunity against a suit for false arrest if he can establish that he had 'arguable probable cause' to arrest the plaintiff," which is the case "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015). The doctrine "provides a broad shield." *Zalaski v. City of Hartford,* 723 F.3d 382, 389 (2d Cir. 2013). It gives an arresting officer "breathing room to make reasonable but mistaken judgments" without fear of liability. *Id.* (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)). Qualified immunity is "a deliberately forgiving standard of review that provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotations and citation omitted).

On the facts presented here, the Court easily concludes that at the very least, officers of reasonable competence could disagree as to whether probable cause existed.

**CONCLUSION**

For the reasons stated above, Plaintiff's motions are DENIED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 47, and close the case.

It is SO ORDERED.

Dated:  March 31, 2017
        New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.